UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MAURICE COLLINS,

                Plaintiff,

v.                                    Case No. 16-cv-1151-pp

TODD CALLISTER,
BONNIE HALPER, and
JEFFREY MANLOVE,

                Defendants.

---

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 14), GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 21) AND DISMISSING CASE**

---

The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendants HAD violated his constitutional rights. On September 19, 2016, the court allowed the plaintiff to proceed on his claim that the defendants were deliberately indifferent to the risk that he would overdose when they failed to grant his request for crushed medication. Dkt. No. 8. The plaintiff filed a motion for summary judgment in the fall of 2016. Dkt. No. 14. The defendants filed their motion for summary judgment in March, 2017. Dkt. No. 43. Those motions are fully briefed. The court will deny the plaintiff's motion and grant the defendants' motion.

I.  **RELEVANT FACTS**[1]

   A. Parties

At all relevant times, the plaintiff was an inmate in the custody of Wisconsin Department of Corrections, housed at the Waupun Correctional Institution. Dkt. No. 31, ¶1. Defendant Jeffrey Manlove was employed in the Health Services Unit (HSU) as a physician; defendant Todd Callister was employed in HSU as a psychiatrist; and defendant Bonnie Halper was employed in the Psychological Services Unit (PSU) as a Psychological Associate and Licensed Professional Counselor. Id. at ¶2-4.

On December 28, 2015, Callister consulted with the plaintiff about his medication management. Id. at ¶15. At the consultation, the plaintiff informed Callister that he was doing better: Mirtazapine was helping his sleep, and he had been eating regularly and exercising to relieve stress. Id. at ¶16. The plaintiff stated that he would like to stop taking Sertraline and try something else to boost his mood; he was still experiencing periods of depression lasting for a day or two. Id.

The plaintiff denied thoughts of wanting to harm himself, but expressed concern that, if his moods worsened, he would begin to have such thoughts. Id.

---

[1] The court takes the relevant facts from Defendants' Response to Plaintiff's Proposed findings of Facts, dkt. no. 24, and Defendants' Reply to Plaintiff's Response to Defendants' Proposed Findings of Fact, dkt. no. 31. The facts are undisputed unless otherwise noted.

at ¶17. The plaintiff did not ask to be placed on crushed medications, nor did he make any statements to Callister about having thoughts about overdosing. Id. Callister did not have any other contact with the plaintiff until three months later (March 22, 2016), when he had another appointment with the plaintiff about his medication management. Id. at ¶20. Despite the plaintiff's assertion that he sent a letter to Callister asking to be placed on crushed medications,[2] dkt. no. 24, ¶5, Callister states that he never received any letters from the plaintiff on that topic, dkt. no. 31, ¶66.

On January 14, 2016, Nurse Gwendolyn Vick (who is not named as a defendant) forwarded a Health Services Request (HSR) form from the plaintiff to defendant Manlove. Id. at ¶21. In the HSR, the plaintiff asked that his medication be crushed because he was having thoughts of overdosing.[3] Id. at ¶22. That same day, Manlove ordered that the plaintiff's prescriptions for Naproxen, Mirtazapine, and Sertraline be crushed. Id. at ¶26. Neither Callister nor Halper received or reviewed the HSR, and neither of them participated in Manlove's decision to order crushed medication. Id. at ¶28, 29.

On January 29, 2016, nursing staff informed Manlove that the plaintiff was engaging in inappropriate behavior when nurses delivered the crushed

---

[2] The plaintiff does not specify when he sent the letter, and there is no record of the letter.
[3] Crushing medication helps to ensure that an inmate is taking his medication as directed and is not hoarding the medication for use in an overdose attempt; not all medication can be crushed. Dkt. No. 31 at ¶23.

3

medication to his cell. Id. at ¶30. Specifically, nursing staff told Manlove that the plaintiff was exposing his genitals and masturbating in front of them. Id.

Due to the plaintiff's behavior, Manlove decided to discontinue his order for crushed medication; however, he first asked that Nurse Gail Waltz (who is not named as a defendant) to contact PSU to make sure the plaintiff was mentally stable, and that discontinuing the crushed mediation order would not pose a risk to the plaintiff. Id. at ¶32-34.

Waltz contacted Halper in PSU that same day, and informed her of the plaintiff's behavior. Id. at ¶34. Halper told Waltz that she would talk to the plaintiff and tell him that his medication would no longer be crushed. Id. at ¶35. Manlove understood that PSU agreed that discontinuing his crushed medication order was acceptable and appropriate. Id. Manlove discontinued his order later that day. Id. at ¶36. Callister had no involvement in the decision to discontinue the order. Id. at ¶38.

A week or so later (on February 5, 2016), Manlove met with the plaintiff about the plaintiff's complaints of lower back pain and athlete's foot. Id. at ¶39. The plaintiff did not ask that Manlove place him back on crushed medication, nor did he make any statements to Manlove about having thoughts of overdosing. Id. The plaintiff asserts that he wrote Manlove to ask why he was taken off crushed medication, id. at ¶40, dtk. no. 24, ¶6; however, the plaintiff does not indicate when he wrote Manlove, nor does he attach a copy of the letter. Further, there is no record of the letter in the plaintiff's certified medical

4

records, and Manlove disputes that he ever received such a letter from the plaintiff. Dkt. No. 31, ¶65. After the February 5, 2016 appointment, Manlove did not have any other contact with the plaintiff prior to the plaintiff's attempted overdose on February 25, 2016. Id. at ¶42, 65.

A little over two weeks later (on Tuesday, February 23, 2016), HSU received two HSRs from the plaintiff, dated on the prior two days (February 21, 2016 and February 22, 2016). Id. at ¶43. In both requests, the plaintiff asked for an order placing him back on crushed medication. Id. Nurse Gunderson (not a defendant) reviewed and responded to the HSRs. Id. at ¶44. Gunderson marked the first as "noted" and referred the second to PSU. Id. at ¶45-46. Gunderson took no further action, nor did she forward the HSRs to Manlove or Callister. Id. at ¶47.

That same day, PSU received two Psychological Service Request (PSR) forms from the plaintiff, dated February 21, 2016 and February 22, 2016. Id. at ¶48. In both PSRs, the plaintiff asked to be placed back on crushed medication. Id. Halper received and reviewed the plaintiff's requests on February 23, and met with him that same day. Id. at ¶49.

At the meeting, the plaintiff was alert and engaged, but said he was really struggling and asked about a transfer to the Wisconsin Secure Program Facility (WSPF); he stated that he had been in segregation too long. Id. at ¶50. The plaintiff asserts that he again asked to be placed back on crushed medication. Id. at ¶60.

5

Halper states that she showed the plaintiff empathy and compassion; she explained to him that she understood that he was struggling, and told him that anyone in the same circumstances also would struggle with the environment. Id. at ¶51. Halper noted that the plaintiff smiled, and appeared to experience positive emotions even though he was struggling. Id. at ¶52. She also stated that his thoughts seemed logical and goal-directed; the two discussed a referral to WSPF, and Halper told the plaintiff that he could not get any more conduct reports and he had to maintain a safe behavior before she could recommend that he go to WSPF. Id. at ¶52-53. Unit staff informed Halper that the plaintiff would be released from segregation in April, as long as he did not receive any more conduct reports. Id. at ¶58.

The February 23, 2016 meeting was conducted cell-side, which is a public environment. Id. at ¶54. Halper asked the plaintiff if he could wait three days, until February 26, 2016, to discuss his concerns further in a more private setting. Id. at ¶54. The plaintiff agreed, and assured Halper that he was not having thoughts of self-harm; Halper states that this led her to believe that the plaintiff could maintain safe behaviors until their scheduled meeting. Id. at ¶55, 57.

Based on her discussions with the plaintiff, Halper decided that the plaintiff did not need to receive crushed medication. Id. at ¶59. She determined that: (1) he was capable of logical and organized thoughts; (2) he had no

thoughts, intent or plan to engage in self-harm; and (3) he demonstrated future orientation. Id. at ¶59.

After the meeting, Halper responded to the plaintiff's PSRs, noting that he had been taken off crushed medication because of his inappropriate behavior and that she had met with him on February 23. Id. at ¶60.

On February 24, 2016, the plaintiff was moved from segregation to the North Program, where inmates are allowed to possess all of their non-controlled medications in their cell to take at their discretion. Dkt. No. 24. ¶12.

On February 25, 2016—the day before the scheduled private meeting with Halper—HSU received an HSR from the plaintiff about his new circumstances. The request explained that the plaintiff didn't feel safe having access to all of his medications. The HSR was dated February 24, 2016 (the plaintiff indicates that he wrote a PSR on February 23, but there is no record of a February 23 PSR, nor does the plaintiff provide a copy). Dkt. No. 31, ¶61; Dkt. No. 24, ¶13. Nurse Vick (not a defendant) received, reviewed and responded to the HSR; she referred it to PSU. Dkt. No. 31, ¶62. Neither Manlove, Callister nor Harper received or reviewed the February 24 HSR. Id. at ¶63.

That same day, at about 11:30 p.m., the plaintiff attempted to overdose on Tylenol, Naproxen and Buspirone. Id. at ¶64. He made this attempt in front of a staff member (not a defendant), who contacted HSU. Id. The plaintiff was sent to the emergency room for evaluation and treatment. Id. at ¶64.

7

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. <u>Deliberate Indifference</u>

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1369 (7th Cir. 1997) (citations omitted). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). <u>Id.</u>

The plaintiff has satisfied the objective prong of this standard. The parties agree, for purposes of summary judgment, that the plaintiff presented with a serious mental health condition when he expressed feelings of wanting to overdose, and later engaged in self-harm. <u>See</u> <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1373 (7th Cir. 1997) (a medical need is serious when "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.")

The parties disagree, however, about whether the defendants acted with a sufficiently culpable state of mind. Specifically, the plaintiff argues that the defendants demonstrated deliberate indifference to his serious mental health needs when they ignored his requests to be placed on crushed medication, despite his telling them that he felt urges to overdose. The defendants dispute the plaintiff's assertions, arguing that they did not know of the risk the plaintiff allegedly faced. The court will consider each defendant in turn.

9

### 1. *Jeffrey Manlove*

The plaintiff first requested that he receive crushed medication on January 14, 2016; Manlove granted that request, and put in the order that same day. It wasn't until about two weeks later, on January 29, 2016, that Manlove learned that the plaintiff had been acting inappropriately when the nurses administered the crushed medication to the plaintiff.

At that point, Manlove decided that there was no need to expose the nurses to that type of misconduct if the plaintiff was mentally stable enough to be taken off the crushed medication order. Manlove asked one of the HSU nurses to reach out to PSU to see if it would be safe to discontinue the crushed medication order.

Halper did not object to Manlove discontinuing the order, and she told the nurse that she would inform the plaintiff why he was being taken off crushed medication. Satisfied that the plaintiff was mentally stable enough to receive his medication without it being crushed, Manlove discontinued his order for crushed medication.

The plaintiff disagrees with Manlove's decision, but his disagreement is not sufficient to raise a genuine dispute as to a material fact that survives summary judgment. See Holloway v. Delaware County Sheriff, 700 F.3d 1063, 1074 (7th Cir. 2012). The plaintiff does not provide any evidence to support his assertion that Manlove's decision was "such a substantial departure from accepted medical professional judgment, practice, or standards, as to

10

demonstrate" that he did not base his decision on a medical judgment. Id. at 1073. To the contrary, the evidence shows that Manlove relied on Halper's judgment that the plaintiff was mentally stable and no longer required crushed medication. Manlove was not deliberately indifferent to a risk; he investigated, and determined there was no risk. Even if his determination ultimately proved wrong, the fact that he exercised his professional judgment means that he did not violate the Eighth Amendment. Edwards v. Snyder, 478 F.3d 827, 830-31 (7th Cir. 2007) (citing Estelle v. Gamble, 429 U.S. 97, 107 (1976) ("Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference.").

Manlove asserts that his decision to take the plaintiff off of crushed medications was the last interaction he had with the plaintiff prior to the plaintiff's suicide attempt nearly a month later. The plaintiff claims, in contrast, that he wrote a letter to Manlove again asking to be placed on crushed medications, but that Manlove ignored him. While a court must draw all justifiable inferences in the non-moving party's favor on summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the plaintiff does not state when he sent Manlove the letter and does not provide a copy of the letter. Nor do the plaintiff's certified medical records contain any such letter. Manlove attests, under oath, that he did not receive such a letter, and the plaintiff does not provide any evidence to the contrary. (The plaintiff's unsworn statements do not constitute evidence.)

11

No jury could reasonably conclude that that after Manlove discontinued his crushed medications order on January 29, 2016, Manlove received a request from the plaintiff to be placed back on crushed medications. There is no evidence that Manlove knew that the plaintiff again was having urges to overdose in late February, and a person cannot be deliberately indifferent to a serious medical condition that he doesn't know about. See Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006) ("[A]n Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.")

Because Manlove did not demonstrate deliberate indifference when he exercised his medical judgment to discontinue the plaintiff's medication on January 29, 2016, and because he did not know of any danger to the plaintiff after that date, the court will grant summary judgment in Manlove's favor.

2. *Todd Callister*

On December 28, 2015—almost two months before the plaintiff's suicide attempt—Callister consulted with the plaintiff about his medication management. At that consultation, the plaintiff did not mention that he was having urges to overdose or harm himself, nor did he ask to receive crushed medication. Callister states that he played no role in Manlove's later decision to order crushed medication, or in Manlove's decision to discontinue the order for

crushed medication. In fact, Callister did not interact with the plaintiff again until March 22, 2016, nearly a month after the attempted overdose.

The plaintiff states that he wrote Callister a letter asking to be placed back on crushed medication. As with his statement that he wrote a letter to Manlove, the plaintiff does not indicate when he sent Callister the letter or provide a copy of the letter, and the plaintiff's certified medical records do not contain any such letter. Callister attests, under oath, that he did not receive such a letter, and the plaintiff has not provided any evidence to the contrary.

No reasonable jury could conclude, on this evidence, that Callister received a letter from the plaintiff asking to be placed on crushed medication. Callister cannot have been deliberately indifferent to a serious medical condition that he didn't know about. See Collins, 462 F.3d at 761 ("[A]n Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk."). Callister is entitled to summary judgment on the plaintiff's deliberate indifference claim.

       3.    *Bonnie Halper*

On February 21 and 22, 2016, the plaintiff submitted two HSRs and two PSRs asking to be placed back on crushed medication. Halper became aware of the PSRs on February 23, 2016, and she met with the plaintiff that same day. Halper states that she met with the plaintiff cell-side and determined that, although he was struggling, he was mentally stable. She asked the plaintiff if

he could wait three days, until February 26, 2016, to meet and talk further in private. The plaintiff agreed. According to Halper, the staff on the unit told her that the plaintiff would not be released from segregation until April.

The evidence shows that the plaintiff was moved the next day, and as a result of that move, was given all of his medication to hold in his cell. The plaintiff tried to notify HSU that he did not feel safe having access to all of his medication. A nurse referred that request to PSU, but neither Manlove, Callistor nor Halper received it. This fact is fatal to the plaintiff's claim.

On February 23, Halper believed the plaintiff to be mentally stable, believed the plaintiff would remain in segregation until April (and therefore would not have access to all of his medication at once), and knew that she had a scheduled meeting to talk further with the plaintiff in three days. There is no evidence to indicate that Halper (or even the plaintiff) knew that the plaintiff would be moved in the next three days to a part of the institution where he would be allowed to possess all of his medication. This is an important fact that, had she known it, could have influenced Halper's decision on whether to order crushed medication for the plaintiff. But Halper did not know about the move until after the plaintiff attempted to overdose. The law provides that individuals are responsible only for what they actually know.

It is possible that Halper's February 23, 2016 assessment that the plaintiff was mentally stable and did not require crushed medication was wrong, even with the limited facts she had. But the standard is not whether the

14

defendant was wrong in her exercising her professional judgment. The standard is whether Halper *knew* of a risk and was deliberately indifferent to that risk. Halper met with the plaintiff, exercised her professional judgment based on the facts before her, and determined there was no need for crushed medication. The court will grant summary judgment in Halper's favor.

### III. CONCLUSION

The court **GRANTS** the defendants' motion for summary judgment**.** Dkt. No. 21.

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 14**.**

The court **ORDERS** that this case is **DISMISSED**, and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under

Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2). A party must file a Federal Rule of Civil Procedure 60(b) motion within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 15th day of May, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge